## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SKYLAR MARIE MARTINS and
NINA L. McLENDON,

      **Plaintiffs,**           CASE NO.:

**vs.**

MHM HEALTH PROFESSIONALS, LLC
d/b/a CENTURION PROFESSIONALS;
CENTURION MANAGED CARE OF FLORIDA, LLC;
CENTURION OF FLORIDA, LLC;
CORRECTIONAL DENTAL PROVIDER NETWORK, PLLC;
and DR. MICHAEL DIPACE, individually,

      **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Skylar Marie Martins and Nina L. McLendon (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby sue the Defendants, MHM Health Professionals, LLC d/b/a Centurion Professionals; Centurion Managed Care of Florida, LLC; Centurion of Florida, LLC; Correctional Dental Provider Network, PLLC (collectively, the "Employer Defendants"); and Dr. Michael DiPace, individually, and allege as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, because a substantial part of the events giving rise to these claims occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff Skylar Marie Martins is a resident of Parrish, Florida.

5.      Plaintiff Nina L. McLendon is a resident of Bartow, Florida.

6.      Defendant MHM Health Professionals, LLC d/b/a Centurion Professionals ("MHM") is a limited liability company authorized to conduct business in Florida, with its principal address at 1593 Spring Hill Road, Suite 600, Vienna, VA 22182.

7.      Defendant Centurion Managed Care of Florida, LLC is a foreign limited liability company organized under the laws of the State of Delaware, with its principal address at 21251 Ridgetop Circle, Suite 150, Sterling, VA 20166, and is licensed and authorized to conduct business in Florida.

8.      Defendant Centurion of Florida, LLC is a limited liability company with its principal address at 21251 Ridgetop Circle, Suite 150, Sterling, VA 20166, and conducts business in Florida.

9. At all relevant times, Defendants MHM Health Professionals, LLC, Centurion Managed Care of Florida, LLC, and Centurion of Florida, LLC acted jointly and/or as integrated enterprises and jointly controlled the terms, conditions, and privileges of Plaintiffs' employment.

10. Defendant Correctional Dental Provider Network, PLLC ("CDPN") is a Florida limited liability company with its principal address at 9318 Wentworth Lane, Port St. Lucie, FL 34986.

11. Defendant Dr. Michael DiPace is an individual who, at all relevant times, was employed as a dentist by Defendant CDPN and worked alongside Plaintiffs at Hardee Correctional Institution in Bowling Green, Florida.

12. Each of the Employer Defendants is an employer as defined by the laws under which this action is brought and employs the required number of employees.

## ADMINISTRATIVE PREREQUISITES

13. All conditions precedent to bringing this action have occurred.

14. On December 11, 2025, Plaintiff Martins timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR), bearing EEOC Charge Number 511-2026-00389.

15. On June 22, 2026, the EEOC issued a Dismissal and Notice of Rights

related to Plaintiff Martins' Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights.

16.    Plaintiff McLendon timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR).

17.    On May 29, 2026, the EEOC issued a Notice of Right to Sue related to Plaintiff McLendon's Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Notice of Right to Sue.

18.    More than 180 days have passed since the filing of the Charges of Discrimination.

## GENERAL ALLEGATIONS

19.    At all times material, Plaintiffs were qualified to perform their job duties within the legitimate expectations of their employer.

20.    Plaintiffs have been required to retain the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

21.    Plaintiffs request a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

22.    Plaintiff Skylar Marie Martins is an Expanded Functions Dental Assistant residing in Parrish, Florida.

23.    Plaintiff Nina L. McLendon is a Dental Hygienist residing in Bartow, Florida.

24.    MHM Health Professionals, LLC d/b/a Centurion Professionals, through its affiliated entities, holds a subcontract with Centurion of Florida, LLC to provide healthcare staff at certain Florida Department of Corrections ("FDOC") facilities, including Hardee Correctional Institution located in Bowling Green, Florida.

25.    On or about April 16, 2024, Centurion Professionals offered Plaintiff Martins a full-time position as a Dental Assistant at Hardee Correctional Institution. Plaintiff Martins accepted and began work on April 22, 2024.

26.    Plaintiff McLendon began her employment as a Dental Hygienist in or around November 2021 and began working at Hardee Correctional Institution in or around May 2023.

27.    At all relevant times, Plaintiffs worked alongside dentists employed by Defendant CDPN, which contracted with the FDOC to provide dental professional services at Hardee Correctional Institution.

28.    In September 2025, Defendant CDPN hired Dr. Michael DiPace as a dentist at Hardee Correctional Institution, effective September 8, 2025.

29.    Upon his arrival, Dr. DiPace immediately engaged in a pattern of ongoing sexual harassment, unwanted physical touching, sexually explicit

comments, and hostile behavior directed at Plaintiffs and other female staff.

30.    Beginning the week of September 8, 2025, Dr. DiPace frequently made sexually explicit, graphic, and degrading comments in the presence of Plaintiffs and other staff, including using degrading and gender-based language and referring to Plaintiff McLendon and another female employee as his "bitches."

31.    On or around September 10, 2025, Dr. DiPace entered Plaintiff McLendon's office, took hand sanitizer from her desk, pushed it against his groin, and said, "suck it, suck it."

32.    On September 22, 2025, while Plaintiff Martins was in the lunchroom with coworkers, Dr. DiPace made graphic comments about women having sex with animals and described pornography on his phone. The comments were disturbing and entirely unrelated to work. Plaintiff Martins left the room because of how inappropriate the conversation was.

33.    On September 26, 2025, while Plaintiff Martins was assisting Dr. DiPace at the computer before a patient procedure, Dr. DiPace came up behind Plaintiff Martins without permission, grabbed the strings of her lab coat, and attempted to tie them around her waist. Plaintiff Martins told him that was too close and inappropriate, but he laughed.

34.    On September 29, 2025, during a dental procedure, Plaintiff Martins asked Dr. DiPace a normal work-related question regarding next steps in the

procedure, and he responded by loudly stating, "Your job is to suck." Employees and patients heard him and laughed. After the procedure was completed, Dr. DiPace pressed his body against Plaintiff Martins' from behind while she was cleaning up. Plaintiff Martins turned around, asked him what he was doing, informed him that it was inappropriate, and moved away.

35.    On September 30, 2025, during lunch with coworkers, Dr. DiPace told Plaintiff Martins that she "needed to wear pants that go up [her] butt crack to make [her] butt look bigger."

36.    On October 2, 2025, after Plaintiff Martins thanked Dr. DiPace for showing staff software information, he said: "You owe me. I'll bring the lube so you can work overtime." Plaintiff Martins and her coworker told him his comments were inappropriate, and he laughed.

37.    On or around October 2, 2025, Dr. DiPace made offensive sexual remarks about child molesters in the presence of Plaintiff McLendon and other female employees, including comments about older men "showing the ropes" to young girls and older women teaching young boys to be "men." When Plaintiff McLendon expressed discomfort and mentioned her son, Dr. DiPace made a sexualized reference to her son, stating, "You are just mad because you can't show him yourself." Plaintiff McLendon informed Dr. DiPace that his comments were inappropriate and left the room.

7

38. That same morning on October 2, 2025, Dr. DiPace entered a small sterilization room where Plaintiff Martins was working alone, shut the door behind him, and confronted her aggressively and in a hostile manner regarding paperwork. A coworker reported the situation to Plaintiff Martins' supervising dentist, Dr. Nazik Elrayah, who responded, "they're fine," and did nothing.

39. On October 2, 2025, Plaintiff Martins and coworker Lisa Barfield reported Dr. DiPace's sexual harassment to their supervising dentist, Dr. Nazik Elrayah, who dismissed the complaint and said the doctor was "just trying to be funny."

40. On multiple occasions, including on or around October 2, 2025, Plaintiff McLendon reported Dr. DiPace's conduct to her supervisor, Dr. Nazik Elrayah, who repeatedly dismissed her complaints and took no corrective action. As a result, Dr. DiPace's behavior continued unabated.

41. On or around October 6, 2025, Dr. DiPace sent Plaintiff McLendon written statements falsely accusing her of harassment and attempting to reframe his own misconduct as hers.

42. On October 6, 2025, Plaintiff Martins filed a formal written sexual harassment report with the assistant to her Health Services Administrator (HSA) and on October 7, 2025, Plaintiff Martins reported Dr. DiPace's conduct to the Florida Department of Corrections (DOC). Plaintiff Martins emailed her written

incident statement as instructed.

43. On or around October 7, 2025, Plaintiff McLendon submitted a formal incident report to the Employer Defendants detailing Dr. DiPace's ongoing sexual harassment and rebutting his retaliatory accusations.

44. On October 8, 2025, DOC officers removed and escorted Dr. DiPace out of the facility.

45. On October 14, 2025, Centurion and DOC supervisors called Plaintiff Martins, McLendon, and coworker Lisa Barfield to a meeting and stated they were considering bringing Dr. DiPace back. When Plaintiff Martins explained that she would have to quit her job because he was a predator, the Warden ultimately stated that Dr. DiPace would not return. However, Centurion's representative then threatened Plaintiff Martins and Plaintiff McLendon with discipline and possible termination for "failing to report sooner," despite the fact that Plaintiff Martins had reported the harassment on three separate occasions on October 2, 2025, October 6, 2025, and October 7, 2025, within 30 days of the harassment beginning.

46. Shortly after Dr. DiPace was removed, Plaintiff McLendon and other employees who had filed incident reports regarding Dr. DiPace's misconduct were summoned to a meeting with the Employer Defendants' leadership, informed that Dr. DiPace denied all allegations, criticized for not reporting the harassment

sooner, and threatened with disciplinary action.

47.    On November 3, 2025, Plaintiff Martins was suddenly placed on suspension without pay. No reason was provided. Plaintiff Martins was told to contact HR, but HR directed her to speak with her HSA, who stated she "could not say anything" and could "get in trouble." Neither HR nor Plaintiff Martins' HSA would explain the reason for her suspension.

48.    On November 3, 2025, Plaintiff McLendon was likewise placed on unpaid administrative leave pending an investigation, and the Employer Defendants refused to inform her of the basis for the investigation. Plaintiff McLendon attempted to contact the Employer Defendants' HR department to obtain further information but received no meaningful response.

49.    When Plaintiff Martins returned to the facility to retrieve her belongings, her written notes documenting the harassment had been deleted from her work computer, including the Word document containing her timeline and a copy of her DOC incident report.

50.    Plaintiff Martins received a formal suspension letter from HR on November 3, 2025.

51.    On November 12, 2025, Plaintiff Martins received a call informing her that she was being terminated for "violating the ethics code of conduct for sexual harassment." When Plaintiff Martins asked what policy she had allegedly

violated, the caller refused to explain.

52.     On or around November 12, 2025, the Employer Defendants terminated Plaintiff McLendon's employment via a phone call from Health Services Administrator Ms. Brummett, citing sexual harassment and failure to provide a professional work environment. When Plaintiff McLendon asked whether a complaint had been made against her and by whom, Ms. Brummett stated that she had no knowledge of any such complaint. Plaintiff McLendon was not provided any documentation supporting her termination or the alleged misconduct.

53.     The Employer Defendants' stated reasons for terminating Plaintiffs were pretextual. Plaintiff Martins and Plaintiff McLendon, who had reported and opposed the harassment, were placed on suspension and terminated.

54.     Plaintiffs were terminated because they reported sexual harassment, opposed discrimination, and participated in the DOC's investigation of Dr. DiPace's conduct.

55.     As a direct and proximate result of the Employer Defendants' unlawful conduct, Plaintiffs have suffered lost wages, lost employment opportunities, emotional distress, anxiety, nightmares, disturbed sleep, and other compensatory damages.

56.     The Employer Defendants' conduct was willful, reckless, and in

callous disregard of Plaintiffs' protected rights.

## COUNT I
## FLORIDA CIVIL RIGHTS ACT ("FCRA") - SEXUAL HARASSMENT /
## HOSTILE WORK ENVIRONMENT
### Against Employer Defendants

57.     Plaintiffs reallege and adopt, as if fully set forth herein, the allegations stated in paragraphs 1 through 56.

58.     Plaintiffs, as female employees, are members of a protected class under the Florida Civil Rights Act ("FCRA"), Chapter 760, et seq., Florida Statutes.

59.     Plaintiffs were subjected to unwelcome sexual harassment by Dr. DiPace, including physically offensive touching and sexually explicit comments, which was based on their sex.

60.     The harassment described herein was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create an abusive working environment.

61.     The Employer Defendants are responsible for the harassing environment created by Dr. DiPace because they knew or should have known of the conduct and failed to take prompt and effective remedial action, and they are vicariously liable for the harassment perpetrated by Dr. DiPace, who held a supervisory and authority position in the workplace.

62.     The above-described acts of sexual harassment constitute a violation of the FCRA, Chapter 760, et seq., Florida Statutes, for which the Employer

Defendants are liable.

63.    As a result of the Employer Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, the following:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Interest on front pay and benefits;

    e.    Compensatory damages, including those for emotional pain and suffering;

    f.    Punitive damages;

    g.    Injunctive relief;

    h.    Attorney's fees and costs; and

    i.    All such other relief/damages to which Plaintiffs are entitled.

## COUNT II
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 - SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
### Against Employer Defendants

64.    Plaintiffs reallege and adopt, as if fully set forth herein, the allegations stated in paragraphs 1 through 56.

65.    Plaintiffs, as female employees, are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

13

66. Plaintiffs were subjected to unwelcome sexual harassment by Dr. DiPace based on their sex, including physically offensive touching and sexually explicit comments.

67. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create a discriminatorily hostile and abusive working environment.

68. The Employer Defendants are responsible for the harassing environment because they knew or should have known of the conduct and failed to take prompt and effective remedial action, and they are vicariously liable for the harassment perpetrated by Dr. DiPace.

69. The above-described acts of sexual harassment constitute a violation of Title VII, 42 U.S.C. § 2000e, et seq.

70. As a result of the Employer Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, the following:

      a. Back pay and benefits;

      b. Interest on back pay and benefits;

      c. Front pay and benefits;

      d. Interest on front pay and benefits;

      e. Compensatory damages, including those for emotional pain

and suffering;

    f.     Punitive damages;

    g.     Injunctive relief;

    h.     Attorney's fees and costs; and

    i.     All such other relief/damages to which Plaintiffs are entitled.

## COUNT III
## FLORIDA CIVIL RIGHTS ACT ("FCRA") - RETALIATION
### Against Employer Defendants

71.    Plaintiffs reallege and adopt, as if fully set forth herein, the allegations stated in paragraphs 1 through 56.

72.    Plaintiffs engaged in protected activity by reporting sexual harassment, opposing unlawful employment practices, and participating in the DOC's investigation of Dr. DiPace's conduct, all of which constitute protected activity under the Florida Civil Rights Act ("FCRA"), Chapter 760, et seq., Florida Statutes.

73.    Plaintiffs suffered adverse employment actions, including suspension without pay and termination of their employment, in retaliation for their protected activity.

74.    The above-described acts of retaliation constitute a violation of the FCRA, Chapter 760, et seq., Florida Statutes, for which the Employer Defendants are liable.

15

75.     As a result of the Employer Defendants' unlawful retaliation, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, the following:

   a.     Back pay and benefits;

   b.     Interest on back pay and benefits;

   c.     Front pay and benefits;

   d.     Interest on front pay and benefits;

   e.     Compensatory damages, including those for emotional pain and suffering;

   f.     Punitive damages;

   g.     Injunctive relief;

   h.     Attorney's fees and costs; and

   i.     All such other relief/damages to which Plaintiffs are entitled.

**COUNT IV**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 - RETALIATION**
**Against Employer Defendants**

76.     Plaintiffs reallege and adopt, as if fully set forth herein, the allegations stated in paragraphs 1 through 56.

77.     Plaintiffs engaged in protected activity by reporting sexual harassment, opposing unlawful employment practices, and participating in the DOC's investigation of Dr. DiPace's conduct, all of which constitute protected

16

activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

78.     Plaintiffs suffered adverse employment actions, including suspension without pay and termination of their employment, for engaging in protected activity.

79.     The above-described acts of retaliation constitute a violation of Title VII, 42 U.S.C. § 2000e, et seq.

80.     As a result of the Employer Defendants' unlawful retaliation, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, the following:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Interest on front pay and benefits;

      e.     Compensatory damages, including those for emotional pain and suffering;

      f.     Punitive damages;

      g.     Injunctive relief;

      h.     Attorney's fees and costs; and

      i.     All such other relief/damages to which Plaintiffs are entitled.

**COUNT V**
**BATTERY**

17

### Against Defendant DiPace, Individually
### (As to Plaintiff Martins only)

81.    Plaintiff Martins realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 56.

82.    On September 26, 2025, Defendant DiPace intentionally and without Plaintiff Martins' consent grabbed the strings of Plaintiff Martins' lab coat from behind and attempted to tie them around her waist, making offensive and unwanted physical contact with Plaintiff Martins.

83.    On September 29, 2025, Defendant DiPace intentionally and without Plaintiff Martins' consent pressed his body against Plaintiff Martins' from behind while she was cleaning up after a patient procedure, making offensive and unwanted physical contact with Plaintiff Martins.

84.    On October 2, 2025, Defendant DiPace intentionally entered a small sterilization room where Plaintiff Martins was working alone, shut the door, and aggressively approached and confronted Plaintiff Martins, engaging in threatening and hostile physical conduct toward her without her consent.

85.    Each of the above-described acts constituted intentional, offensive, and harmful physical contact or an intentional act placing Plaintiff Martins in reasonable apprehension of imminent harmful or offensive contact, committed without Plaintiff Martins' consent.

86.    As a direct and proximate result of Defendant DiPace's battery,

Plaintiff Martins has suffered and continues to suffer damages, including physical discomfort, emotional distress, anxiety, nightmares, disturbed sleep, and other compensatory damages.

## COUNT VI
## VICARIOUS LIABILITY FOR BATTERY
### Against Employer Defendants
### (As to Plaintiff Martins only)

87.    Plaintiff Martins realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 56 and 81 through 86.

88.    At all relevant times, Defendant DiPace was employed as a dentist by Defendant CDPN and was acting within the course and scope of his employment and authority at Hardee Correctional Institution when he committed the battery upon Plaintiff Martins.

89.    Defendant DiPace held a supervisory and authority position over the dental workplace at Hardee Correctional Institution, and his acts of battery were committed while performing or purporting to perform the functions of his employment.

90.    The Employer Defendants, including CDPN and the Centurion entities as joint employers or integrated enterprises controlling the terms and conditions of the workplace, knew or should have known of Defendant DiPace's propensity for inappropriate and offensive physical conduct in the workplace and failed to take adequate measures to prevent it.

19

91. The Employer Defendants are therefore vicariously liable to Plaintiff Martins for the acts of battery committed by Defendant DiPace.

92. As a direct and proximate result of the Employer Defendants' vicarious liability for the battery committed by Defendant DiPace, Plaintiff Martins has suffered and continues to suffer damages, including physical discomfort, emotional distress, anxiety, nightmares, disturbed sleep, and other compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Skylar Marie Martins and Nina L. McLendon respectfully request that this Court enter judgment in their favor and against Defendants as follows:

**On Counts I and III (Florida Civil Rights Act):**

a. Reinstatement of Plaintiffs to their former positions with the same seniority status they would have had but for the unlawful conduct, or front pay in lieu thereof;

b. Back pay and benefits, with interest;

c. Front pay and benefits, with interest;

d. Compensatory damages, including those for emotional pain and suffering;

e. Punitive damages;

f.      Injunctive relief;

g.      Reasonable attorney's fees and costs; and

h.      All such other relief to which Plaintiffs are entitled.

**On Counts II and IV (Title VII of the Civil Rights Act of 1964):**

a.      Reinstatement of Plaintiffs to their former positions with the same seniority status they would have had but for the unlawful conduct, or front pay in lieu thereof;

b.      Back pay and benefits, with interest;

c.      Front pay and benefits, with interest;

d.      Compensatory damages, including those for emotional pain and suffering;

e.      Punitive damages;

f.      Injunctive relief;

g.      Reasonable attorney's fees and costs; and

h.      All such other relief to which Plaintiffs are entitled.

**On Counts V and VI (Battery and Vicarious Liability, as to Plaintiff Martins only):**

a.      Compensatory damages for physical discomfort, emotional distress, and all other harm sustained;

b.      Punitive damages against Defendant DiPace; and

c.     Such other and further relief as the Court deems just and proper.

**On All Counts:**

i.     Pre- and post-judgment interest as permitted by law; and

j.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts and issues triable by jury.

DATED this 3rd day of August, 2026.

**FLORIN|GRAY**

*/s/ Troy Longman II*
**Troy Longman II**
Florida Bar No.: 1031921
tlongman@floringray.com
**WOLFGANG FLORIN, ESQUIRE**
Florida Bar No.: 907804
Primary: wflorin@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 220-4000
Facsimile (727) 483-7942
*Attorneys for Plaintiffs*